HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
alreenh@haelaw.com
AARON M. OLSEN (259923)
aarono@haelaw.com
ANNA C. SCHWARTZ (346268)
annas@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Gelareh Eslami and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GELAREH ESLAMI, an Individual; on behalf of herself and all others similarly situated,

Plaintiff,

v.

VOYCE, INC., a Delaware Corporation; and CLOUDBREAK HEALTH, LLC, a Delaware Limited Liability Company,

Defendants.

Case No.: '25CV2089 RSH DEB

CLASS AND COLLECTIVE ACTION COMPLAINT

DEMAND FOR JURY TRIAL

HAEGGQUIST & ECK, LLP

Plaintiff Gelareh Eslami ("Ms. Eslami" or "Plaintiff"), by her attorneys, brings this action on behalf of herself and all others similarly situated against Defendants Voyce, Inc. ("Voyce") and Cloudbreak Health, LLC ("Cloudbreak").[1] Collectively, Voyce and Cloudbreak are herein referred to as "Defendants" or "Equiti." Plaintiff makes the following allegations upon information and belief (except those allegations as to Plaintiff or her attorneys which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

## NATURE OF THE CASE

*Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries*

*~ National Employment Law Project, Oct. 26, 2020*

1. That is the headline of a policy and data brief published by the National Employment Law Project.[2] Classifying employees as "'independent contractors' deprives them of core rights and protections, such as minimum wage, overtime pay, contributions to Social Security, the right to collective bargaining . . . , workers' compensation, unemployment compensation, and protection from discrimination." *Id.* Employers such as Defendants, who intentionally misclassify its employees as independent contractors, not only deny workers the protection of workplace laws, but rob unemployment and workers' compensation funds of billions of much-needed dollars, and reduce federal, state and local tax withholding revenues, while saving as much as 30 percent of payroll and related taxes otherwise paid for employees. *Id.*

---

[1] In or around August 2024, Cloudbreak acquired Voyce, at which time the two companies rebranded to doing business as "Equiti."

[2] *See* https://www.nelp.org/insights-research/independent-contractor-misclassification-imposes-huge-costs-workers-federal-state-treasuries-update-october-2020/ (last visited 12/5/2024).

Even the office of the United States Federal Trade Commission has recognized how misclassification "takes ***billions*** from working people and gives it to lawbreakers. It is a pervasive and national scandal."[3]

2. Defendants are a core contributor to this pervasive and national scandal. Defendants' business focuses on providing interpreters ("Interpreters") to facilitate communications between Defendants' healthcare provider clients and Limited English Proficient ("LEP") patients. Their Interpreters are core and indispensable to Defendants' business. Unfortunately, Defendants misclassified Plaintiff and their Interpreters as independent contractors to avoid obligations owed to employees, to cheat the government out of substantial tax revenue, and to gain an unfair advantage over competitors who comply with the law.

3. Accordingly, Plaintiff brings this action, on behalf of herself and on behalf of all other similarly situated Interpreters, to recover damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, *et seq.*, and to recover unpaid wages and penalties under the California Labor Code.

4. Specifically, Plaintiff's claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of herself and all other similarly situated persons who have worked for Defendants as Interpreters within the United States and its territories and districts for the period of three years prior to the filing of this Complaint to the final disposition of this action (herein referred to as the "FLSA Class Period"). Plaintiff, and the similarly situated Interpreters she seeks to represent in the collective action under the FLSA are herein referred to as the "FLSA Class." The FLSA Class members are similarly situated because they were and are

---

[3] *See* Alvaro M. Bedoya, Comm'r, U.S. Fed. Trade Comm'n, Keynote Address at Global Competition Review: Law Leaders Global Summit, *Overawed: Worker Misclassification as a Potential Unfair Method of Competition* (Feb. 2, 2024), available at https://www.ftc.gov/system/files/ftc_gov/pdf/Overawed-Speech-02-02-2024.pdf (last visited 12/4/2024).

Interpreters misclassified by Defendants as "independent contractors," subjected to the same policies, terms and conditions of employment by Defendants, were denied complete and/or prompt payment for hours worked pursuant to a common policy and/or practice of Defendants, and have not been compensated for all hours worked pursuant to a common policy and/or practice of Defendants.

5. Plaintiff also brings claims under the California Labor Code on behalf of herself and all other Interpreters similarly situated, and such claims are brought as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 23. Such claims are brought on behalf of all other similarly situated persons who have worked for Defendants as Interpreters within the state of California who were misclassified as "independent contractors" ("California Class") for the period of four years prior to the filing of this Complaint to the final disposition of this action (herein referred to as the "California Class Period"). The "California Class" consists of a sub-group of the FLSA Class. The California Class members are similarly situated because they were/are all subjected to the same terms and conditions of employment by Defendants, and to Defendants' common policy and/or practice of misclassifying them as "independent contractors," failing to pay them for all hours worked, failing to pay overtime rates for overtime work, failing to provide complete wage statements, failing to make timely payment of wages, and associated penalties.

6. To redress the harms suffered, Plaintiff brings claims for: (1) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. §207 (On Behalf of Plaintiff and the FLSA Class); (2) Failure to Pay Wages in Violation of California Labor Code §218 (On Behalf of Plaintiff and the California Class); (3) Failure to Pay Overtime Wages in Violation of California Labor Code §§510, 1194 and Wage Order 4 (On Behalf of Plaintiff and the California Class); (4) Failure to Pay Minimum Wages in Violation of California Labor Code §§1194, 1197 and Wage Order 4 (On Behalf of Plaintiff and the California Class); (5) Failure to Reimburse Business Expenses in Violation of California Labor Code §2802 (On Behalf of Plaintiff and the California Class); (6)

Failure to Furnish and Maintain Accurate Wage Statements and Employment Records in Violation of California Labor Code §§226 and 1198.5 (On Behalf of Plaintiff and the California Class); (7) Failure to Provide Meal Periods in Violation of California Labor Code §§226.7, 512 and Wage Order 4 (On Behalf of Plaintiff and the California Class); (8) Failure to Provide Rest Periods in Violation of California Labor Code §226.7 and Wage Order 4 (On Behalf of Plaintiff and the California Class); (9) Failure to Pay All Wages Due and Owing at Time of Discharge and/or Resignation in Violation of California Labor Code §§201- 203 (On Behalf of Plaintiff and the California Class); and (10) Violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §17200, *et seq*.

**JURISDICTION AND VENUE**

7. Pursuant to 28 U.S.C. §§1331 and 1332(a)(1), the Court has subject matter jurisdiction over this action because this action involves federal questions, and because Plaintiff is a citizen of the State of California and Defendants are Delaware corporations with their principal place of business in the State of Florida. As such there is complete diversity between the parties, and the amount in controversy in this action exceeds $75,000.

8. Pursuant to 28 U.S.C. §1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under California law. Plaintiff's claims are properly consolidated as a single action because her claims involve the same Defendants, arise from the same nexus of facts and circumstances, and involve overlapping issues of fact and law.

9. The Southern District of California has personal jurisdiction over the parties in this matter. Plaintiff is, and at all relevant times was, a citizen residing in San Diego County, California. Defendants either have, or currently do, business within California, and operate in California. Defendants are either licensed to do, or do, business in California, have employees who reside in California, and promote, sell, and market services to customers throughout California. Finally, the acts and

omissions which are outlined in this Complaint took place within the County of San Diego, State of California.

10. Venue is proper in this District under 28 U.S.C. §1391 because Plaintiff and Defendants are, and at all relevant times have been, subject to the personal jurisdiction of this Court, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

### Plaintiff Gelareh Eslami

11. Plaintiff Gelareh Eslami is a natural person, over 18 years old. At relevant times, Plaintiff resided within the County of San Diego, State of California. Plaintiff was hired by Voyce as an Interpreter on or about October 1, 2022. In or around August 2024, Voyce was acquired by Cloudbreak. Plaintiff continued working for Defendants as an Interpreter in the County of San Diego until her employment was terminated on or about January 31, 2025.

12. As an Interpreter, Plaintiff was a vital member of Defendants' team, who was responsible for facilitating accurate and culturally competent communication between healthcare providers and LEP patients using Defendants' online software application that utilized audio and video modalities (aka the "Voyce Interpreting Platform"). Plaintiff was economically dependent on Defendants for providing her work and income, and Defendants had the right to, and in fact did, control the manner and means of Plaintiff's work. Due to the obligations of the job, Plaintiff could, and only did, work for Defendants during the period she was employed by Defendants.

13. Through their policies, Defendants not only dictated Plaintiff's schedule and hours of work, but they controlled what Plaintiff could wear to work, the words Plaintiff had to use when translating, the tone of voice she had to speak with, her "professional appearance" (e.g., brushed hair), a pre-approved compliant environment (e.g., solid background that was quiet and free of distraction), and adherence to all of Defendants' policies and guidelines.

14. Preliminarily, to be an Interpreter, Defendants required Plaintiff to receive certain training, including undergoing a minimum of a 120-hour medical interpreter course, at least 10 hours of continuing education annually, and achieve a minimum assessment score of Interagency Language Roundtable ("ILR") Level 3. Defendants also required Plaintiff to be subject to routine quality monitoring and coaching to ensure she followed Defendants' policies.

15. For example, Plaintiff was required to comply with Defendants' "attire requirements" which mandated Plaintiff wear a "collared black (dark colored) polo tshirt or shirt/blouse." She also had to adhere to Defendants' environment requirements, which required Plaintiff to only work from a preapproved location that had a "solid background" that was always "quiet and distraction-free." Defendants even controlled the manner of Plaintiff's "demeanor" while interpreting, prohibiting her from eating, chewing gum, slouching, crossing her arms, resting her face against her hands, huffing, puffing, rolling her eyes, or otherwise verbalizing her frustration or being distracted.

16. As for other examples, Plaintiff was required to say a "presession" after she introduced herself to Defendants' client and the LEP: "Everything you say will be interpreted and will remain confidential." Defendants provided Plaintiff with "scripts" to follow for different scenarios that it expected her to adhere to. For example, Plaintiff was required to adhere to Defendants' "hold time policy" whereby she was required to quote specific language if a client asked her to stay on hold and follow the steps in the policy.

17. Plaintiff was subjected to discipline and coaching for failing to adhere to Defendants' policies and guidelines. For example, Defendants threatened to suspend Plaintiff for not having "proper lighting" during a video call because it was allegedly "a bit too dark during the video services." Defendants reminded Plaintiff that to avoid termination, she was required to adhere to Defendants' guidelines. Similarly, Defendants reprimanded Plaintiff for allegedly not following Defendants' "attire



HAEGGQUIST & ECK, LLP

requirements" because they were unable to determine whether Plaintiff was wearing a black collared shirt (even though Plaintiff was in fact in compliance). Defendants again reminded Plaintiff that she could be terminated for non-compliance.

18. Defendants also controlled Plaintiff's pay, schedule, work hours, and tools for work. To perform her essential job duties as an Interpreter for Defendants, Plaintiff was required to log into a computer and use the Voyce Interpreting Platform. As such, Defendants required Plaintiff to have at a minimum, high-speed internet, a computer, a headset, good lighting, and a notepad. Plaintiff had to perform her work from a pre-approved space with a solid background that was quiet and free of distraction. Despite these requirements, Defendants failed to reimburse Plaintiff for business expenses she necessarily incurred to perform her essential job duties, such as a laptop, phone, ring light, and internet.

19. As for Plaintiff's work schedule and hours of work, throughout most of her employment, Defendants scheduled Plaintiff to work eight-hour shifts from 9 a.m. to 5 p.m., five days per week. Defendants solely dictated Plaintiff's work schedule. For these scheduled shifts, Defendants promised to pay Plaintiff $18 per hour.

20. Defendants mandated a "90% availability requirement," meaning of the 8-hour dedicated shift (480 minutes), Plaintiff was required to be logged into the Voyce Interpreting Platform on a live call with a client for at least 432 minutes (90%). In other words, Plaintiff was allotted 48 minutes of paid time during the 8-hour shift where she did not have to be logged into the Voyce Interpreting Platform on a live call. However, if Plaintiff exceeded the 48 minutes of time not logged in online, even by a minute, Defendants failed to pay Plaintiff for any of the hours not logged in. For example, if Plaintiff had 50 minutes of time not logged in online during her scheduled 8-hour shift, Defendants failed to pay Plaintiff for the entire 50-minute period. The result was Defendants failing to pay Plaintiff for rest periods in violation of California law. It also resulted in Defendants failing to pay Plaintiff for time worked while she was under Defendants' control. Pursuant to Defendants' policy, Plaintiff was required

HAEGGQUIST & ECK, LLP

to remain ready and attentive at her computer to interpret if a call came in anytime during her 8-hour shift.

21. In addition, Defendants did not compensate Plaintiff for the time spent logging into her computer and logging into the Voyce Interpreting Platform, or for conducting the required audio and visual tests, which would generally take up to 5 minutes to complete.

22. Outside of the scheduled hours, Plaintiff was allowed to take overflow calls. Defendants compensated Plaintiff at the rate of $.070 per minute for the time the call was live, but Defendants did not compensate Plaintiff for time spent working when the call was not live, including the hours Plaintiff was waiting for incoming calls and/or for time logging on and off the system. If she was logged in, including for overflow calls, Defendants required Plaintiff to be ready and attentive at her computer, with notifications on, to interpret if a call was routed to her.

23. On occasion, Plaintiff worked more than eight hours in a day, or more than forty hours in a week, for which Defendants failed to pay Plaintiff at the applicable overtime rate.

24. As a result of intentionally misclassifying Plaintiff as an independent contractor, Defendants also failed to provide Plaintiff with at least 40 hours or five days of paid sick leave, in violation of California law. Indeed, Defendants failed to provide Plaintiff with any paid sick leave. Likewise, Defendants failed to pay applicable unemployment insurance, state disability insurance, workers' compensation insurance, payroll taxes, and contributions to Social Security and Medicare. Due to the unlawful misclassification, Plaintiff was also denied other benefits afforded to Defendants' employees, such as health and disability benefits, unemployment insurance benefits and job-protected leave (e.g., CFRA, FMLA).

25. On or about January 31, 2025, Defendants terminated Plaintiff's employment. At the time of discharge, Defendants failed to timely pay Plaintiff all wages due and owing.

HAEGGQUIST & ECK, LLP

**Defendants**

26. Upon information and belief, at all relevant times, Voyce, Inc. operated in the State of California as a foreign corporation, with its principal place of business located at 1301 International Pkwy., Ste 510, Sunrise, FL 33323.

27. Upon information and belief, at all relevant times, Cloudbreak Health, LLC, operated in the State of California as a foreign corporation, with its principal place of business located at 1103 Schrock Rd., Suite 200, Columbus, OH 43229.

28. In or around August 2024, Cloudbreak, who, like Voyce, provided remote interpretation services for the healthcare industry, acquired Voyce, and the company rebranded to doing business as Equiti. Upon information and belief, from the time Cloudbreak acquired Voyce, the companies have been an integrated enterprise because of their interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. In addition, since or about August 2024, Defendants Cloudbreak and Voyce were joint employers of Plaintiff and members of the FLSA and California classes, and they acted directly and/or indirectly on behalf of one another and are therefore liable for the FLSA and Labor Code violations alleged herein.

29. In doing the acts alleged herein, Defendants' employees, subcontractors, and agents acted within the course and scope of their employment and agency with Defendants. Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of their employees, subcontractors, and agents, and are vicariously liable for the wrongful conduct of their employees, subcontractors, and agents alleged herein.

30. Plaintiff is informed and believes, and thereon alleges, that each defendant is, and at all times mentioned was, the agent, employee, or representative of each other defendant. Each defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent

authority, or the alleged acts and omissions of each defendant as agent were subsequently ratified and adopted by each other defendant as principal.

## FACTS ALLEGATIONS COMMON TO ALL CLAIMS

31. Defendants are in the business of providing "medical interpreters" to "deliver precise and reliable healthcare communication."[4] Defendants promise their customers that their interpreters undergo a minimum of a 120-hour medical interpreter course, receive at least 10 hours of continuing education annually, have achieved a minimum assessment score of ILR Level 3, and receive routine quality monitoring and coaching.

32. Interpreters are vital members of Defendants' interpretation team who are responsible for, *inter alia*, facilitating clear, accurate, and culturally competent communication between healthcare providers and Limited LEP patients. Interpreters serve as a professional conduit for information and, when appropriate, a cultural broker to ensure full understanding. Interpreters support both healthcare and educational settings via Defendants' audio and video modalities.

### Defendants Misclassified Plaintiff and Medical Interpreters as Independent Contractors

33. At all relevant times, Defendants controlled the manner and means by which Plaintiff and members of the FLSA and California Classes perform their work, through both direct and indirect control and because of the economic realities.

(a) Defendants' business is the provision of interpreter services, and therefore Plaintiffs and the FLSA and California Classes were engaged to perform work that is central to Defendants' business. In other words, the work performed by

---

4 https://web.voyceglobal.com/interpreters?utm_source=google&utm_medium=cpc&utm_campaign=22304610852&utm_content=181685238411&utm_term=voyce+global&gad_source=1&gad_campaignid=22304610852&gbraid=0AAAAApZbopTMs-wqzhFLgANYLZUmkdwHI&gclid=Cj0KCQjwjJrCBhCXARIsAI5x66XyeQk3lxi2KXBXe1je9pyzF6hjW6zVYy_YAJStkZ2vjJOvWN2wzRcaAjUtEALw_wcB



HAEGGQUIST & ECK, LLP

Plaintiff and the FLSA and California Classes was routine, central, and indispensable to Defendants' business;

(b) Defendants retained the right to discharge Plaintiff at will and members of the FLSA and California Classes, and Defendants exercised that right;

(c) Plaintiff and members of the FLSA and California Classes worked under the direction of Defendants and their agents when performing their interpreting services;

(d) Defendants required and arranged for paid and unpaid training of the Interpreters;

(e) Defendants employ supervisors to monitor and coach Plaintiff and members of the FLSA and California Classes regarding their performance and quality and retained the right to discipline and terminate Interpreters;

(f) Defendants required Plaintiff and members of the FLSA and California Classes to adhere to their Quality policy and participate in Defendants' "team-oriented" environment;

(g) Defendants controlled the manner and mode of interpreting work performed by Plaintiff and the FLSA and California Classes. For example, Defendants mandated Plaintiff and the FLSA and California Classes to comply with their Policies and Disclaimers and performance guidelines, including, *inter alia*, "attire requirements" (e.g., "collared black (or dark colored) polo shirt or shirt/blouse"), visual video requirements (e.g., "solid backdrop," "proper lighting," "seated correctly within frame of the camera"), reading script prompts and adhering to script guidelines, and subjecting Plaintiff and FLSA and California Classes to discipline, including termination, if they did not comply;

(h) Defendants required Plaintiff and the FLSA and California Classes to use Defendants' online software platform to perform their essential job duties;

HAEGGQUIST & ECK, LLP

(i) Defendants required Plaintiff and the FLSA and California Classes to work mandated schedules; they were not free to depart for the workday until the end of their scheduled shift;

(j) Defendants' method of compensating Plaintiff and the FLSA and California Classes was based on time, not by job;

(k) Interpreters typically have longer tenures, not one-off jobs, and they enjoyed a level of permanency in such work; and

(l) Due to requirements to fulfill their job duties to Defendants, Plaintiff and the FLSA and California Classes were unable to obtain alternative employment.

34. This is an illustrative, not exhaustive, list of the ways Defendants retained total control over the manner and means of Plaintiff's and the FLSA and California Classes' work, demonstrating Defendants intentionally misclassified them as independent contractors.

**Defendants' Employment Practices Resulted in Wage & Hour Violations**

35. Defendants' unlawful misclassification of their Interpreters not only resulted in the theft of wages and benefits from their workers, but Defendants are stealing from the United States Treasury and gaining an unfair advantage over honest competitors.

36. Defendants failed to provide Plaintiff and the FLSA and California Classes with the protection of being an employee, including, without limitation, workers' compensation benefits, unemployment insurance benefits, disability insurance, vacation or sick pay, minimum wages, social security contributions, overtime wages, reimbursement of business expenses, accurate wage statements, and other benefits available to Defendants' employees.

37. Defendants failed to pay Plaintiff and the FLSA and California Classes for all time worked, including performing work when they were not logged into Defendants' software application and interpreting a live call. For example, Defendants



HAEGGQUIST & ECK, LLP

did not compensate Plaintiff and the FLSA and California Classes for the time spent logging into their computers and logging into the Voyce Interpreting Platform, or for conducting the required audio and visual tests, which would generally take up to 5 minutes to complete.

38. In addition, outside of their scheduled hours, Defendants allowed Plaintiff and members of the FLSA and California Classes to be available, attentive, and ready at their computers for incoming overflow calls. While Defendants compensated Interpreters at a certain monetary rate per minute for the time the call was live, Defendants failed to compensate Plaintiff and members of the FLSA and California Classes for time spent working when the call was not live, including the hours the Interpreters were waiting for incoming calls and/or for time logging on and off the system. If Interpreters were logged in, including for overflow calls, Defendants required them to be ready and attentive at their computer, with notifications on, to interpret if a call was routed to them.

39. In addition, if Plaintiff and members of the FLSA and California Classes did not meet the 90% availability requirement during their scheduled shifts, meaning being logged into the Voyce Interpreting Platform on a live call with a client for at least 432 minutes during an 8-hour shift, Defendants failed to pay them for any of the hours not logged in. The result was Defendants failing to pay Plaintiff and members of the FLSA and California Classes for rest periods in violation of California law. It also resulted in Defendants failing to pay Interpreters for time worked while they were under Defendants' control.

40. On occasion, Plaintiff and members of the FLSA and California Classes also worked more than eight hours in a day, or more than forty hours in a week, for which Defendants did not pay them for such hours at the applicable overtime rates.

41. In addition, Plaintiff and members of the FLSA and California Classes, incurred expenses in the performance of their work that was necessary and required by Defendants. Such expenses were incurred as a direct consequence of the discharge

of their duties as directed or assigned by Defendants. Defendants knew Plaintiff and members of the FLSA and California Classes incurred these necessary expenses. These expenses include, *inter alia*, laptop/computer expenses, lighting, and internet service.

42. Moreover, Defendants failed to issue Plaintiff and members of the FLSA and California Classes with itemized wage statements that contained all the information required by California law. Plaintiff and members of the FLSA and California Classes were injured by this non-compliance, as they were unable to confirm the accuracy – or lack thereof – of the wages and hours they worked.

43. Finally, Defendants failed to promptly pay all wages due and owing to Plaintiff and members of the FLSA and California Classes upon termination and/or resignation of employment.

44. As a direct result of Defendants' conduct, Plaintiff and members of the FLSA and California Classes have suffered, and continue to suffer, lost wages, benefits, and other damages set forth herein. Plaintiff is a victim of Defendants' unlawful practices and therefore brings this action to recover damages and other relief mentioned herein.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

45. Plaintiff brings her FLSA claims as a collective action on behalf of herself and all other similarly situated persons who performed work for Defendants as an Interpreter within the United States and its territories but who were treated by Defendants as "independent contractors."

46. The essential job duties of the FLSA Class were/are the same as or substantially like those of Plaintiff, and members of the FLSA Class were/are paid in the same manner and under the same terms and conditions, common policies, plans, and practices as Plaintiff.

47. During the Class Period, Defendants were aware of their obligations under the FLSA and knowingly engaged in the allegations set forth herein.



HAEGGQUIST & ECK, LLP

48. As a result of Defendants' conduct, Defendants violated 29 U.S.C. §§206 and 207 by failing to pay Plaintiff and the FLSA Class the prevailing minimum wage for all hours worked and for failing to make timely payment.

49. Defendants' violations of the FLSA were willful, repeated, knowing, intentional and without a good faith basis, and damaged Plaintiff and the FLSA Class.

50. As such, Defendants are liable to Plaintiff and the FLSA Class for the full amount of their unpaid wages, including liquidated damages, plus attorneys' fees and costs incurred in pursuing this action.

51. While the exact number of the FLSA Class is currently unknown to Plaintiff, based on information and belief, the number likely exceeds 1,000 similarly situated persons.

## RULE 23 CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and the California Class, which includes all persons who during the Class Period performed work for Defendants as an Interpreter but who were improperly classified by Defendants as an independent contractor.

53. Specifically excluded from the proposed California Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

54. **Numerosity**. The members of the California Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed California Class contains many hundreds to thousands of members. The precise number of California Class members is unknown

to Plaintiff. The true number of California Class members is known by the Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

55. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the California Class and predominate over any questions affecting only individual California Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants improperly classified Plaintiff and the California Class as independent contractors;

(b) whether Defendants failed to pay Plaintiff and the California Class for all hours worked during the Class Period;

(c) whether Defendants failed to pay Plaintiff and the California Class the applicable overtime rates for working overtime hours;

(d) whether Defendants failed to reimburse or indemnify Plaintiff and the California Class for expenses incurred in violation of Labor Code §2802;

(e) whether Defendants failed to timely pay Plaintiff and the California Class all wages due and owing in violation of Labor Code §§201-203;

(f) whether Defendants failed to issue Plaintiff and the California Class compliant wage statements in violation of Labor Code §226;

(g) whether Defendants violations were willful; and

(h) whether Class members are entitled to damages.

56. These common questions of law and fact arise from the same course of events, transactions, time periods, and practices, and each member of the California Class will make similar legal and factual arguments to prove liability.

57. **Typicality**. Plaintiff's claims are typical of the claims of the members of the California Class in that the Defendants misclassified Plaintiff as an independent

HAEGGQUIST & ECK, LLP

contractor, like all other members of the California Class. The relief Plaintiff seeks is also typical of the relief which is sought on behalf of the California Class.

58. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the California Class. Her interests are co-extensive with those of the California Class that she seeks to represent. Plaintiff is willing and able to represent the California Class fairly and to vigorously pursue their similar claims in this action. Plaintiff has also retained counsel highly experienced in complex class action litigation. Plaintiff has no adverse or antagonistic interests to those of the California Class.

59. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual California Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be difficult for the California Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if California Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

60. In the alternative, the California Class may be also certified because:

(a) the prosecution of separate actions by individual California Class members would create a risk of inconsistent or varying adjudication with respect to individual California Class members that would establish incompatible standards of conduct for the Defendants;

(b) the prosecution of separate actions by individual California Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other California Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

(c) Defendants have acted or refused to act on grounds generally applicable to the California Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the California Class as a whole; and/or

(d) certification of specific issues such as Defendants' liability is appropriate.

61. Adequate notice can be given to California Class members directly using information maintained in Defendants' records or through notice by publication.

62. Damages may be calculated from the data maintained in Defendants' records, so that the cost of administering a recovery for the California Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the California Class is not a barrier to class certification.

**COUNT I**

**Failure to Pay Overtime**
**In Violation of the FLSA, 29 U.S.C. §207**
**(On Behalf of Plaintiff and the FLSA Class)**

**(Against All Defendants)**

63. Plaintiff, on behalf of herself and the FLSA Class, realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

64. Plaintiff and members of the FLSA Class were non-exempt employees of Defendants during the Class Period within the meaning of the FLSA, 29 U.S.C. §203(e).

65. Defendants employed Plaintiff and members of the FLSA Class (29 U.S.C. §203(g), they are an employer as defined by the FLSA, 29 U.S.C. §203(d),

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

and they are an enterprise engaged in commerce as defined by 29 U.S.C. §§203(b) and (s)(1).

66. The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees, such as Plaintiff and members of the FLSA Class, at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek. 29 U.S.C. §207(a)(1).

67. Defendants failed to compensate Plaintiff and members of the FLSA Class at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek, in violation of 29 U.S.C. §207(a).

68. Defendants' failure to pay overtime wages was willful and not in good faith, and Defendants had no reasonable grounds for believing that their conduct complied with the FLSA.

69. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the FLSA Class, suffered damages in the form of unpaid overtime compensation, liquidated damages, interest, and attorneys' fees and costs, as provided by 29 U.S.C. §216(b).

## COUNT II

## Failure to Pay Wages
## In Violation of California Labor Code §218
## (On Behalf of Plaintiff and the California Class)

## (Against all Defendants)

70. Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

71. California Labor Code §218 provides for a private right of action for "any wage claimant to sue directly or through an assignee for any wages or penalty due him" under the provisions of Article 1 (§§200-244) of the Labor Code. Cal. Lab. Code §218.

72. "Wages" are defined as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of

HAEGGQUIST & ECK, LLP

time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code §200(a). The California Supreme Court construes the term wages broadly to "'include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation,'" e.g., money, room and board, clothing, vacation and sick pay, and insurance. *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009) (citation omitted).

73. Due to the misclassification of Plaintiff and the California Class as independent contractors, Defendants denied Plaintiff and the California Class wages that were due and owing.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the California Class suffered damages in an amount to be proven at the time of trial. Plaintiff may also recover penalties, costs, reasonable attorneys' fees, and prejudgment interest.

**COUNT III**

**Failure to Pay Overtime Wages**
**In Violation of California Labor Code §§510, 1194 and Wage Order 4**
**(On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

75. Plaintiff, on behalf of herself and the California Class, realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

76. Employees must be paid one and one-half of their regular wages for every hour worked above forty hours in each work week, or above eight hours in each workday. *See* 8 Cal. Code Regs. §11040(3). "[A]ny employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code §1194(a); *see also* Cal. Lab. Code §§218, 218.5, 218.6.

HAEGGQUIST & ECK, LLP

77. California Labor Code §510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code §510(a); *see also* 8 Cal. Code Regs. §11050(3)(A)(1).

78. Plaintiff and members of the California Class did not work alternative workweek schedules pursuant to California Labor Code §§511, 514, or 554.

79. Plaintiff and members of the California Class worked more than eight hours in a workday and/or more than 40 hours in a workweek without being compensated at the applicable overtime rate. Plaintiff and members of the California Class also worked on a seventh day of a workweek without being compensated at the applicable overtime rate. Defendants failed to pay Plaintiff and the California Class overtime wages.

80. As such, Defendants must pay for all unpaid overtime wages, interest, costs of suit, and reasonable attorneys' fees. Cal. Lab. Code §§218, 218.5, 218.6, 1194(a)

## COUNT IV

### Failure to Pay Minimum Wages In Violation of California Labor Code §§1194 and 1197, and Wage Order 4 (On Behalf of Plaintiff and the California Class)

### (Against All Defendants)

81. Plaintiff, on behalf of herself and the California Class, realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

82. California Labor Code §1197 provides, "[t]he minimum wage for employees fixed by the commission . . . is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful." Cal. Lab. Code §1197. The statutory minimum wages are set forth in California Labor Code §1182.12.

83. "All wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code §204(a). "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." 8 Cal. Code Regs. §11040(4)(B).

84. The broad definition of "hours worked" includes "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *See* 8 Cal. Code Regs. §11040(2)(K). California workers must receive the minimum wage for ***each hour worked*** during the payroll period, even if the agreed-upon compensation exceeds the minimum wage for the total hours worked. *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 51-52 (2013) (emphasis added); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005); *Oman v. Delta Airlines, Inc.*, 9 Cal. 5th 762, 782 (2020).

85. Defendants subjected Plaintiff and the California Class to their control during hours for which Plaintiff and the California Class were not compensated. It achieved this by, *inter alia*, failing to maintain time records so that Plaintiff and the California Class were not paid any wages for certain hours.

86. "[A]ny employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the unpaid balance

of the full amount of this minimum wage . . . , including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code §1194(a).

87. Because Plaintiff and the California Class suffered damage as a direct result of Defendants' failure to pay them for all hours worked, Plaintiff and the California Class may recover the full amount of the difference between what they were paid and what was required to be paid, including interest thereon, reasonable attorneys' fees, and costs of suit. Cal. Lab. Code §§1194(a), 1194.3, 218, 218.5, 218.6. Plaintiff and the California Class may also "recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code §1194.2(a).

**COUNT V**

**Failure to Reimburse Reasonable Business Expenses In Violation of California Labor Code §2802 (On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

88. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

89. "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Lab. Code §2802(a). The purpose of the statute is "'to prevent employers from passing their operating expenses on to their employees.'" *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) (citations omitted); *id.* at 1145 (holding, to "show liability under section 2802, an employee need only show that he or she was required" to incur a business-related expense and "not reimbursed").

90. "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article



HAEGGQUIST & ECK, LLP

shall not deprive any employee . . . of any right or remedy to which he is entitled under the laws of this State." Cal. Lab. Code §2804; *see also Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 951 (2008) (holding Labor Code §2804 applies to Labor Code §2802, "making all contracts that waive an employee's right to indemnification null and void"); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1123 (S.D. Cal. 2006) (holding Labor Code §2804 precluded employer from arguing the deductions it made in violation of Labor Code §2802 were "contractually agreed upon with the Plaintiff").

91. As set forth above, Plaintiff and the California Class incurred necessary expenditures in direct consequence of the discharge of their employment duties and obedience to Defendants' directions including, but not limited to office equipment, such as laptops/computers, lighting devices, headsets, and internet service.

92. As a result of the Defendants' unlawful acts, Plaintiff and the California Class are entitled to recover unreimbursed expenditures, interest, and attorneys' fees and costs, in amounts to be proven at the time of trial. Cal. Lab. Code §2802(b), (c).

## COUNT VI

**Failure to Furnish and Maintain Accurate Wage Statements and Employment Records In Violation of California Labor Code §§226 and 1198.5 (On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

93. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

94. "Employers are required to provide itemized wage statements to employees, containing specified information, all set forth in section 226(a)." *Heritage Residential Care, Inc. v. Div. of Labor Standards Enf't*, 192 Cal. App. 4th 75, 80 (2011). "The requirement is mandatory." *Id.* Each "detachable part of the check" must accurately itemize nine categories of information. Cal. Lab. Code §226(a). The categories applicable here include: "(1) gross wages earned, (2) total hours worked

. . . , (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number . . . , (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates . . . and the corresponding number of hours worked at each hourly rate." *Id.*

95. Defendants intentionally and willfully failed to provide Plaintiff and the California Class with complete and accurate wage statements as required under California Labor Code §226(a). The deficiencies included, among other things, the failure to accurately list the gross wages earned, accurate rates of pay, net wages earned, hours worked, and the corresponding number of hours worked at each hourly rate by the employee. Defendants' failure was not an isolated and unintentional payroll error due to a clerical or inadvertent mistake, but a knowing and intentional pattern and practice that occurred throughout Plaintiff's and California Class members' employment with Defendants.

96. As a result of Defendants' failures, Plaintiff and the California Class are deemed to have suffered injury. Cal. Lab. Code §226(e)(2)(A), (B). Specifically, Plaintiff and the California Class have been injured because they were denied their legal right to receive, and their protected interest in receiving, accurately itemized wage statements under California Labor Code §226(a). In addition, because Defendants failed to provide the accurate hours worked and rates of pay on wage statements, Defendants have prevented Plaintiff and the California Class from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment.

97. In addition to accurate wage statements, pursuant to Wage Order 4, an employer "shall keep accurate information with respect to each employee" including "[t]ime records showing when the employee begins and ends each work period." 8 Cal. Code Regs. §11040(7)(A)(3). "Meal periods, split shift intervals and total daily hours worked shall also be recorded." *Id.* In addition, "[t]otal wages paid each payroll

HAEGGQUIST & ECK, LLP

period" and "[t]otal hours worked in the payroll period and applicable rates of pay" must be accurately maintained. 8 Cal. Code Regs. §11040(7)(A)(4), (5).

98. Pursuant to California Labor Code §226(b) an employer is required to maintain employees' wage statements and "shall afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer." Cal. Lab. Code §226(b); *see also* 8 Cal. Code Regs. §11040(7)(A)-(C) (identify accurate information employers are required to maintain). An employer who receives a written or oral request to receive a copy of these records "shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request." Cal. Lab. Code §226(c). In addition, pursuant to California Labor Code §432, upon request an employer must give an employee a copy of any instrument signed by the employee relating to the obtaining or holding of employment. Any person violating this article is guilty of a misdemeanor. Cal. Lab. Code §433.

99. Finally, pursuant to California Labor Code §1198.5(a), every "current and former employee, or his or her representative, has the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." Cal. Lab. Code §1198.5(a). The employer shall make the contents of those personnel records available for inspection at a reasonable time, "but not later than 30 calendar days from the date the employer receives a written request." Cal. Lab. Code §1198.5(b)(1).

100. Here, on January 15, 2025, and again on February 11, 2025, Plaintiff requested in writing to inspect and copy her employment files and records pursuant to the above statutory provisions. More than 30 days have elapsed, and Defendants failed to comply with the request in a timely manner or otherwise make the records available for inspection and copying. In addition, based on information and belief, Defendants failed to maintain accurate records relating to Plaintiff's time records,

wage records, and meal and rest periods. As such, Defendants violated California Labor Code §§226, 432, 1174, 1198.5, and Wage Order 4.

101. As a proximate result of the Defendants' unlawful acts, Plaintiff and the California Class have suffered and continue to suffer harm and "[are] entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and are entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code §226(e)(1).

102. In addition, a failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in California Labor Code §226(c) entitles the employee to recover a $750 penalty from the employer. Cal. Lab. Code §226(f). An employee may also bring an action for injunctive relief to ensure compliance and is entitled to an award of costs and reasonable attorneys' fees. Cal. Lab. Code §226(h). An employee may also recover a "penalty" of $750 from the employer when it fails to permit an employee to inspect or copy personnel records within the times specified by California Labor Code §1198.5(b)(1). Cal. Lab. Code §1198.5(k). An employee may also bring an action for injunctive relief to ensure compliance and is entitled to an award of costs and reasonable attorney's fees. Cal. Lab. Code §1198.5(l).

103. Defendants' violations of California Labor Code §226(a) prevented Plaintiff and the California Class from knowing, understanding, and disputing the wages paid to them, and resulted in an unjustified economic enrichment to Defendants. As a result of Defendants' knowing and intentional failure to comply with the California Labor Code provisions above, Plaintiff and the California Class have suffered an injury, the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial.

104. Plaintiff has had to file this lawsuit to analyze the extent of the underpayment, thereby causing Plaintiff to incur expenses and lost time. Plaintiff would not have had to engage in these efforts and incur these costs had Defendants properly classified Plaintiff and provided the accurate rate of pay. This has also delayed Plaintiff's ability to demand and recover the underpayment of wages from Defendants.

105. Accordingly, pursuant to the above noted laws, including California Labor Code §§218, 218.5, 218.6, 226(e)(1), and 1198.5(l), Plaintiff, on behalf of herself and the California Class, seeks injunctive relief, penalties, costs of suit, including reasonable attorneys' fees, and interest.

## COUNT VII

**Failure to Provide Meal Periods**
**In Violation of California Labor Code §§226.7, 512 and Wage Order 4**
**(On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

106. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

107. Plaintiff and the California Class did not meet the criteria established for exemption as an executive, professional, or administrative employee, and therefore, Plaintiff and the California Class were non-exempt employees entitled to the protections of California Labor Code §§226.7 and 512 throughout their employment with Defendants.

108. California Labor Code §512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code §512(a). California's accompanying Regulations further provide:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not



HAEGGQUIST & ECK, LLP

> more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

8 Cal. Code Regs. §11040(11)(A); Wage Order 4(11)(A).

109. Further, an "employer shall not require an employee to work during a meal . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission." Cal. Lab. Code §226.7(b). "If an employer fails to provide an employee a meal . . . period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." Cal. Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(11)(B); Wage Order 4(11)(B).

110. During the relevant period, Plaintiff and the California Class did not receive compliant meal breaks for working more than five and/or ten hours per day because Defendants knowingly failed to ever make such breaks available. In addition, the nature of Plaintiff's and the California Class members' work precluded Plaintiff and the California Class from taking timely and compliant off-duty meal breaks.

111. Further, during the relevant period, Defendants failed to pay Plaintiff and the California Class one additional hour of pay at their regular rate of compensation for each workday that a meal break was missed, late, and/or interrupted pursuant to Labor Code §226.7(c) and Wage Order 4(11).

112. As a result of Defendants' failure to provide Plaintiff and the California Class with duty-free meal breaks and their failure to pay them one additional hour of pay at their regular rate of compensation for each workday that a meal break was

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

missed, late, and/or interrupted, Plaintiff and the California Class suffered and continues to suffer a loss of wages and compensation.

113. Plaintiff, on behalf of herself and the California Class, seeks recovery of attorneys' fees, costs, and interest pursuant to, *inter alia*, Labor Code §§218.5 and 218.6.

**COUNT VIII**

**Failure to Provide Rest Periods**
**In Violation of California Labor Code §226.7 and Wage Order 4**
**(On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

114. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

115. Plaintiff and the California Class did not meet the criteria established for exemption as an executive, professional, or administrative employee, and therefore, Plaintiff and the California Class were non-exempt employees entitled to the protections of California Labor Code §226.7 throughout their employment with Defendants.

116. Plaintiff and the California Class were entitled "to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." 8 Cal. Code Regs. §11040(12)(A); IWC Wage Order 4(12)(A).

117. "An employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . ." Cal. Lab. Code §226.7(b). "If an employer fails to provide an employee a . . . rest . . . period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest . . . period is not provided."

Cal. Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(12)(B); Wage Order No. 4 (12)(B).

118. During the relevant period, Defendants did not provide Plaintiff and the California Class with the opportunity to take a duty-free, ten-minute rest period for every four hours or major fraction thereof that he worked. Defendants failed to pay Plaintiff and California Class members one additional hour of pay at their regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted pursuant to Cal. Labor Code §226.7(b) and Wage Order 4(12).

119. As a result of Defendants' failure to provide Plaintiff and the California Class with duty-free rest periods and their failure to pay Plaintiff and the California Class one additional hour of pay at their regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted, Plaintiff and the California Class suffered and continue to suffer a loss of wages and compensation.

120. Plaintiff, on behalf of herself and the California Class, seeks recovery of attorneys' fees, costs, and interest pursuant to, *inter alia*, California Labor Code §§218.5 and 218.6.

**COUNT IX**

**Failure to Timely Pay Wages Due at Termination**
**In Violation of California Labor Code §§201- 203**
**(On Behalf of Plaintiff and the California Class)**

**(Against All Defendants)**

121. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

122. California Labor Code §201 provides in pertinent part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code §201(a).

123. California Labor Code §201 provides in pertinent part: If an employee quits his or her employment, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of



HAEGGQUIST & ECK, LLP

his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

124. California Labor Code §203 provides in pertinent part: "If an employer willfully fails to pay . . . in accordance with Sections 201 [and] 202 . . . , any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." Cal. Lab. Code §203(a).

125. Defendants violated California Labor Code §201 by failing to pay Plaintiff and California Class members all wages due and owing at the time of discharge and/or within 72 hours thereafter. Defendants' failure to pay Plaintiff and the California Class all wages due and owing was intentional and was not accidental or inadvertent.

126. Plaintiff and California Class members are entitled to compensation for all forms of wages earned, but to date has not received such compensation therefore entitling them to penalties under California Labor Code §203.

127. More than 30 days have passed since Plaintiff left Defendants' employ, and she has not received payment pursuant to California Labor Code §§201, 202, and 203. Because of Defendants' willful conduct in not paying all earned wages, Plaintiff and California Class members are entitled to 30 days' wages as a premium wage or penalty under California Labor Code §203.

**COUNT X**

**Violation of the Unfair Competition Law**
**California Business & Professions Code §§17200, *et seq.***

**(Against All Defendants)**

128. Plaintiff realleges and incorporates here by reference every allegation in the preceding and subsequent paragraphs.

129. Defendants are "persons" as defined under Business and Professions Code §17021. Each of the directors, officers, and/or agents of Defendants are equally



HAEGGQUIST & ECK, LLP

responsible for the acts of the others as set forth in Business and Professions Code §17095.

130. The actions of Defendants constitute unlawful, unfair and fraudulent business practices within the meaning of Business and Professions Code §17200, *et seq*.

131. As described above, Defendants have conducted the following unlawful activities:

(a) violation of the FLSA, 29 U.S.C. §§206, 207, and 211;

(b) violation of 26 U.S.C. §§3102, 3403, 7201, 7202, 7206(1), 7212(A), and 18 U.S.C. §371; and

(c) violation of California Labor Code §§201, 202, 203, 204, 207, 218, 226, 226.6, 226.7, 226.8, 246, 247, 247.5, 432, 432.5, 510, 551, 552, 553, 558, 1174, 1182.12, 1194, 1197, 1197.1, 1198.5, 2775, 2778, 2800, 2802, 2808, 2808.1, 2810.5, 3550, and 3551.

132. Defendants' activities also constitute unfair practices in violation of Business and Professions Code §17200, *et seq.*, because its practices violate the above noted laws, and/or violate an established public policy, and/or the practice was immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff, other employees, the public, the government, and competition.

133. The identified violations constitute business practices because they were done repeatedly over a period, and in a systematic manner to the detriment of Plaintiff other employees, the public, the government, and competition.

134. As a result of Defendants' violations as noted above, Plaintiff has suffered injury-in-fact and has lost money as a result. This injury-in-fact and loss of money consists of the lost wages and other restitutionary remedies provided by the identified laws and other resulting harms. Plaintiff is entitled to restitution, an injunction, declaratory relief, and other equitable relief against such unlawful practices to prevent future damage for which there is no adequate remedy at law.

135. As a direct and proximate result of the unfair business practices of Defendants, Plaintiff is entitled to equitable and injunctive relief, including full restitution of all wages which have been unlawfully lost as a result of the business acts and practices described herein, and enjoining Defendants to cease and desist from engaging in the practices described herein for the maximum time permitted pursuant to Business and Professions Code §17208, including any tolling.

136. Plaintiff is also entitled to attorneys' fees, pursuant to Code of Civil Procedure §1021.5, and any other applicable provision for attorneys' fees and costs, based upon the violation of the underlying public policies.

**PRAYER**

WHEREFORE, Plaintiff seeks judgment as follows:

A. For compensatory damages, including unpaid wages (past and future), loss of wages and benefits (past and future), and emotional distress damages (past and future) according to proof at trial;

B. For civil penalties pursuant to California Labor Code §§203, 226, and 1174;

C. For attorneys' fees and costs of suit pursuant to Code of Civil Procedure §1021.5, California Labor Code §§218, 218.5, 218.6, 226(e)(1), 226(h), 1102.5(j), 1198.5(l), and any other applicable provision for attorneys' fees and costs;

D. Liquidated damages pursuant to, inter alia, California Labor Code §1194.2;

E. For pre-judgment and post-judgment interest to the extent allowable by law, including without limitation, pursuant to California Labor Code §218.6;

F. For restitution and injunctive and declaratory relief;

G. For an injunction restraining Defendants from continuing to engage in unlawful and unfair business practices in violation of Business & Professions Code §17200, *et seq.*; and

H. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims.

Dated: August 13, 2025

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
ANNA C. SCHWARTZ (346268)

By: /s/ Aaron M. Olsen
AARON M. OLSEN

225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Gelareh Eslami and the Proposed Class